1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PACIFIC BORING, INCORPORATED, a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>STAHELI TRENCHLESS CONSULTANTS, INC., a Washington corporation, and KIMBERLIE STAHELI LOUCH, P.E., Ph.D., individually,<br><br>    Defendants. | Case No. C14-187RSM<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S REMAINING CLAIMS AND DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I.  INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment on Plaintiff's Remaining Claims, Dkt. #24, and Plaintiff's Cross-Motion for Summary Judgment Denying Defendants' Collateral Estoppel Affirmative Defense, Dkt. #33.  Defendants Staheli Trenchless Consultants, Inc. ("STC") and Kimberlie Staheli, Ph.D. ("Dr. Staheli") argue that Plaintiff Pacific Boring, Inc. ("Pacific Boring")'s remaining claims relitigate issues previously settled by Judge Shaffer in King County Superior Court and are otherwise contrary to Washington law.  Pacific Boring opposes Defendants' Motion, arguing that Defendants rely heavily on unsettled facts pulled from Judge Shaffer's nonbinding decisions.  Pacific Boring

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

also moves for summary judgment dismissal of Defendants' affirmative defense of collateral estoppel, arguing that the effect will be to "strike from the record… essentially the entire factual foundation upon which defendants' [summary judgment] motion, and its several legal arguments, are premised." *Id.* at 2.  Having reviewed the parties' briefing, and having determined that oral argument is not necessary, the Court agrees with Defendants, GRANTS their Motion and DENIES Plaintiff's Motion.

## II.     BACKGROUND

On or about April 19, 2010, Staheli Trenchless Consultants, Inc. ("STC") contracted with the Northshore Utility District ("the District")[1] to provide engineering and/or surveying consulting services related to the installation of a sewer bypass line at O.O. Denny Park in Kirkland, Washington.  Dkt. #1-1 at 2-4; Dkt. #25 at 1.[2]  Within the scope of its consulting services, STC reviewed and edited a report by Gray & Osborne, Inc., the engineer of record for the sewer bypass project.  Dkt. #25 at 1-2.  Although the work was originally contracted as a microtunneling project, the District decided to terminate that contract and redesign the project as an auger bore project.  *Id.*  STC later contracted with Gray & Osborne to consult about auger bore specifications.  *Id*; Dkt. #1-1 at 20.

The subsequent background facts were previously summarized in King County Superior Court:

> In July of 2011, the District invited contractors to bid on a public works project to install 1,300, approximately, sewer lines near [O.O. Denny Park].  The bidding documents contained information on the site and required that the contractor use an auger boring machine to complete the job.

---

[1]  The District is a water and wastewater district that serves over 20,000 residents in the north end of Lake Washington. Dkt. #26-1 at 19.
[2]  Although the Declaration of Kimberlie Staheli, Dkt. #25, is submitted by Defendants without the necessary statement that it is declared under penalty of perjury, the Court notes that the facts from that Declaration cited by the Court are not challenged by Plaintiff and will thus be relied on.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

New West… in consultation with it's (sic) subcontractor, Pacific Boring, bid for and won this job.  The original specification (sic) designed by the District were for the contractor to use the auger bore method.  And the specifications contained several baselines that told the contractor what kinds of conditions to prepare for….  And the specifications also require the contractor to dewater the work area as necessary to prevent uncontrolled flows of water and soil.  The District included the geotechnical data report which we've all been calling the GDR created by Geotechnical Engineers, Inc., (sic) detailing findings from ten borings along the planned route.

…

In August of 2011, New West approached the District with a proposal to use an alternative design for the project.  And what New West wanted to do was open shield pipe jacking instead of the auger bore design with a different alignment using two segments instead of three.

…

So the parties executed Change Order No. 1… in September of 2011…. The responsibility for design under the change order was put on New West.

…

In Late November of 2011, New West began to tunnel using the alternative method, but there were problems that prevented Pacific Boring from completing as planned.

On December 6th, workers found a big sink hole right above the alignment and New West put in its first notice of differing site condition indicating that the sink hole was caused by excessive cobbles.

…

On January 31, Pacific Boring removed its boring machine because it wasn't feasible to finish the section with that method.  The District asked New West to continue with an auger bore.  New West told Pacific Boring to do that, and Pacific Boring said that wasn't feasible.  The parties executed Change Order No. 2 which let New West go forward with an open cut method and provided

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

the framework for doing that and New West ended up finishing segment one by open trench method. Pacific Boring didn't do further work on segment one.

Before it started work on segment two, New West sought permission to complete the job using micro-tunneling—still another method—because of concerns that using auger boring or open shield hacking would result in the same problems seen in segment one. After some dispute, the parties executed Change Order No. 3 to allow micro tunneling, and the second one was finished on April 5th, 2012.

Dkt. #26-3 at 44-47. These background facts appear to be undisputed between the parties.

In May of 2012, New West brought suit against the District and Pacific Boring for breach of contract before Judge Catherine Shaffer in King County Superior Court. Dkt. #24 at 5; Dkt. #37-4 at 43. Pacific Boring then brought its own suit against New West and the District for breach of contract, among other claims. *Id.* The two cases were consolidated. *Id.* A review of the submitted briefing, declarations, and orders from the state court case makes clear that it involved the same underlying nexus of events as this federal case, *i.e.*, unexpected soil conditions at a sewer line project at O.O. Denny Park in Kirkland, Washington.

On September 6, 2013, Judge Shaffer reached several rulings on partial summary judgment. *See* Dkt. # 26-3. Relevant rulings are renumbered below:

1. "…pursuant to the flowdown provisions in the subcontract between New West and Pacific Boring, Pacific Boring agreed to assume all obligations and responsibilities which New West had assumed toward the District for Pacific Boring's work in its subcontract with New West;"
2. "…Pacific Boring agreed to the provisions in Change Order No. 1…;"
3. "…Pacific Boring assumed toward New West the obligations referenced in that order of the contract between New West and the District;"
4. "…any determinations made by the Court with regard to the existence of differing site conditions, or lack thereof, under the contract with the District are equally binding on both New West and Pacific Boring."

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

5. "Pacific Boring's differing site condition claims based on encountering Cobbles or Boulders or Groundwater (or any combination thereof) on the Project are hereby dismissed."

6. "New West's claims based on that [sic] it and/or its subcontractor Pacific Boring encountering Cobbles or Boulders of Groundwater (or any combination thereof) on the Project are hereby dismissed with Prejudice."

Dkt. # 26-3 at 2-9. Judge Shaffer also ruled "[t]o the extent this order requires interpretation, the transcript for the ruling on September 6, 2013 is incorporated by reference." *Id.* at 7. That transcript shows Judge Shaffer ruled:

7. "So the parties executed Change Order No. 1, the infamous and notorious Change Order No. 1 in September of 2011. ... The responsibility for design under the change order was put on New West." *Id.* at 45.

8. "…the thing I look to first is the contract. And the baselines in the contract are both broad and clear. They require the contractor to be capable of extracting and ingesting any and all quantities of cobble actually encountered and limits the District's payment for boulders to those over 36 inches. It's crystal clear that groundwater is another disclosed situation in the sense of the parties being involved in working under the level of groundwater was disclosed even in the GDR [Geotechnical Data Report], and that's just not disputed here. So with regard to whether we have a DSC claim based on encountering [cobbles, boulders, or groundwater] the answer to that question is no." *Id.* at 47-48.

On December 13, 2013, Judge Shaffer reached several further rulings on partial summary judgment, including, *inter alia*:

9. The court dismissed with prejudice New West's claim against the District that dewatering along the alignment of the Project was outside the scope of the prime Contract;

10. The court dismissed with prejudice all claims (whether raised by New West or Pacific Boring) arising from Segment 2 of the Project;

11. The court dismissed with prejudice Pacific Boring and/or New West's claim for defective specifications, including but not limited to any claim for additional compensation on the basis that the Project could not have been constructed using the District's specified auger bore method.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

Dkt. # 26-4 at 40-41.   Judge Shaffer's oral ruling makes clear that the Court was dismissing Pacific Boring's differing site condition claim as to Segment 2 "for the simple reason that there was no timely notice under the contract of differing site conditions on Segment 2."  Dkt. #26-5 at 21.

Defendants assert that at some point after this "PBI brought claims against Staheli in King County Superior Court, the exact claims raised in the present lawsuit, and immediately requested the court consolidate the two lawsuits." Dkt. #24 at 9.[3]  While the record does not confirm this assertion, it does show that Pacific Boring requested a continuance of the trial date in King County Superior Court on January 22, 2014, in part so that it could "add causes of action directly related to the existing causes of action against the District's engineer, not yet a party to the action…"  Dkt. #26-4 at 45.   Pacific Boring, through the same counsel as the instant action, argued that "good cause exists… to have all related claims arising out (sic) these facts and circumstances to be litigated in the same action…. Moreover, should this Court deny the Motion for a Continuance, it is likely that Pacific Boring will file a separate action against Staheli Trenchless Consultants and the District.  The causes of action will arise out of certain of the same facts and circumstances and involve a common set of law and facts also at issue in the present litigation." *Id.* at 46-47.   Judge Shaffer denied this motion.  Dkt. #26-5 at 1-6.   The remaining claims between the parties in that matter were settled and Pacific Boring stipulated to a dismissal without prejudice. *See* Dkt. #26-5 at 7-13.

---

[3] Defendants' citation for this assertion is to "PBI's Opp. To Mot. Summ. J., at 15, New West Devel. (Aug. 5, 2013, Dkt. # 60)."  This citation, to the middle of a section of Pacific Boring's August 5, 2013, opposition brief entitled "The Detail Specifications of the Prime Contract," appears to be in error and does not provide any evidence of the fact asserted.  Additionally, citing to the title of the document and the original docket number assigned in the King County Superior Court action does not conform to LCR 10(e)(6).  The parties are advised to cite to the record by the docket number and page as filed *in this case, i.e.* "Dkt. #26-2 at 25."

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

On February 7, 2014, Plaintiff Pacific Boring filed a new action against Defendants STC and Dr. Staheli in this Court. Dkt. #1. The degree of similarity between the issues in the instant action and the issues in the King County Superior Court action is debated by the parties.

Plaintiff alleges in the instant matter that Defendants contacted Plaintiff on June 30, 2011, "and solicited [Plaintiff] to bid the job. *Id.* at 12. Plaintiff further alleges that, at some later date before Plaintiff bid on the project, Defendants advised Plaintiff about the ground conditions, stating they were "very dense and 'should stand' and flowing water was not anticipated." *Id.* Plaintiff further alleges that Defendants "advised that open shield pipe jacking ('OSPJ') was an appropriate trenchless tunneling method based on anticipated ground conditions." *Id.* at 12-13. Plaintiff alleges that Defendants "manipulated" the aforementioned geotechnical reports to "shed liability" for unanticipated conditions. Dkt. #12 at 6-7. Plaintiff alleges that after successfully starting the project, it encountered unanticipated, wet flowing ground, a condition it alleges was known by Defendants, but hidden from Plaintiff, causing the sinkhole, prohibiting forward progress, and giving rise to a claim for differing site conditions. Dkt. #1 at 15-16.

On November 21, 2014, this Court dismissed with prejudice Plaintiff's claims for declaratory relief and violations of Washington's Consumer Protection Act. Dkt. #21. Plaintiff's claims of professional negligence and negligent misrepresentation remain and are the subject of Defendants' Motion for Summary Judgment. *See* Dkt. #24.

### III.   DISCUSSION

**A. Legal Standard on Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).   Material facts are those which might affect the outcome of the suit under governing law.  *Anderson,* 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 251.

## B.  Plaintiff's Cross-Motion for Summary Judgment on Collateral Estoppel

### a.  Washington Law on Collateral Estoppel

Collateral estoppel is a judicially created doctrine designed to conserve judicial resources and provide finality to litigants.  *State v. Barnes*, 85 Wn. App. 638, 652-53, 932 P.2d 669 (1997).  Because this is a diversity action, state law controls whether the previous state court determinations have a preclusive effect on Plaintiff's claims.  *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002) (citing *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994) ("Because this is a diversity case, we apply the collateral estoppel rules of the forum state . . . ."); *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) (holding that "a federal court sitting in diversity must apply the *res judicata* law of the state in

which it sits"); *Priest v. Am. Smelting & Ref. Co.*, 409 F.2d 1229, 1231 (9th Cir. 1969) ("Since federal jurisdiction in this case is based upon diversity of citizenship, the district court and this court must apply the substantive law of the forum state, . . . including the law pertaining to collateral estoppel.")).

Under Washington law, collateral estoppel is appropriate when four factors are present: "(1) the issue decided in the prior adjudication is identical with the issue now before the court, (2) there was a final judgment on the merits, (3) the party against whom the plea is now asserted is a party or is in privity with a party to the prior adjudication, and (4) the application of the collateral estoppel doctrine will not work an injustice against the party against whom the doctrine is applied." *San Telmo Assocs. v. Seattle*, 108 Wn.2d 20, 22-23, 735 P.2d 673 (1987) (citing *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983)).  The Court will address each of these *Rains* factors in turn.

### i.  Factor 1: Identical Issues

Plaintiff argues that this case "involves claims of misrepresentation and negligence on the part of a professional engineer" and that such claims "were neither pled, argued, or decided in the State Court case."  Dkt. #33 at 10.  Plaintiff cites to no law to support their contention that this is fatal to a defense of collateral estoppel as to specific issues.  Defendants argue that "[w]hether the claims of the first action are different from the claims in the second action has no bearing on whether a party can relitigate issues decided in the first action," citing to *S. Pac. R&R v. United States*, 168 U.S. 1, 48-49, 42 L. Ed. 355, 18 S Ct. 18 (1897) for the proposition that "a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery, cannot be disputed in a subsequent suit… ; and even if the second suit is for a different cause of action, the right, question, or fact once so

determined must ... be taken as conclusively established…." Dkt. #36 at 18. Plaintiff fails to address this case law on Reply. *See* Dkt. #40 at 11.

The Court agrees with Plaintiff that the *claims* at issue in this case are not identical to those pled in the state court matter. However, several of the issues before Judge Shaffer are identical to the issues before the Court. For those issues that were previously decided in the state court matter, this factor is met.

### ii.   Factor 2: Final Judgment on the Merits

Plaintiff argues that "[b]ecause Judge Shaffer's summary judgment rulings lacked any CR 54(b) certification of finality, and adjudicated fewer than all claims of all parties, they remained subject to revision at any time before entry of final judgment." Dkt. #33 at 4. Plaintiff argues that these rulings were "effectively so revised" by the eventual settlement agreement between Plaintiff and the Defendants in the previous state court matter, and that because this settlement resolved Plaintiff's claims without prejudice, collateral estoppel cannot apply, citing to *Marquardt v. Fed. Old Line Ins. Co.*, 33 Wn. App. 685, 689-90, 658 P.2d 80 (1983).

Defendants argue that the issue of whether partial summary judgment can satisfy this factor has been addressed by a Washington court of appeals in *Cunningham v. State*, 61 Wn. App. 562, 811 P.2d 225 (1991), also citing to *In re Dependency of H.S.*, 2015 Wash. App. LEXIS 960, *7 (Wash. Ct. App. Apr. 30, 2015) ("For the purposes of collateral estoppel, a final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.").

*Cunningham* held that the CR 54 standard does not apply when determining whether an order on partial summary judgment can bar relitigation of the same issues in a different lawsuit.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

61 Wn. App. at 566 (stating "[w]e recently rejected a similar [CR 54] argument on the ground that such a rigorous finality requirement does not implement the purposes of collateral estoppel: to protect prevailing parties from relitigating issues already decided in their favor, and to promote judicial economy.")  *Cunningham* discusses aligning Washington law "with the majority of courts which employ a pragmatic approach to determine finality for purposes of collateral estoppel."  *Id.* at 566-567.  *Cunningham* cites to several sources for sub-factors to consider, including *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80 (2d Cir. 1961), *cert. denied*, 368 U.S. 986 (1962) (whether a judgment not otherwise final ought to be considered final for purposes of collateral estoppel turns on "the nature of the decision (*i.e.*, that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review"); and The Restatement (Second) of Judgments (1982) § 13 (a final judgment "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect…. Factors for a court to consider in determining whether the requisite firmness is present include whether the prior decision was adequately deliberated, whether it was firm rather than tentative, whether the parties were fully heard, whether the court supported its decision with a reasoned opinion, and whether the decision was subject to appeal or in fact was reviewed on appeal.").  61 Wn. App. at 567.

In examining the language of the state court settlement agreement, it is not clear to the Court that the parties agreed to *revise* the rulings of Judge Shaffer, or that such an agreement could effectively do so.  Plaintiff's citation to *Marquardt* is inapposite, as Defendants are not hoping to apply collateral estoppel to the judgment of dismissal based on the settlement agreement, but to Judge Shaffer's earlier partial summary judgment decisions.

Under *Cunningham*, partial summary judgments can satisfy this *Rains* factor, and the application of collateral estoppel to issues resolved by partial summary judgment is within the purpose of the judicially created collateral estoppel doctrine—to conserve judicial resources and provide finality to litigants.  Here, the Court finds that the previous decisions of Judge Shaffer were "sufficiently firm," Plaintiff was fully heard, the hearing was adequate, there was opportunity for appeal, and Judge Shaffer's opinions were reasoned, despite Plaintiff's protests to the contrary.  This factor is met.

### iii.   Factor 3: Same Party Against whom the Plea is Now Asserted

Plaintiff does not address this factor in its motion and thus concedes that it is the same party as in the King County Superior Court matter.

### iv.   Factor 4: Injustice of Applying Collateral Estoppel

Plaintiff, as the party asserting that the application of collateral estoppel would be unjust, has the burden of showing injustice.  *Garcia v. Wilson*, 63 Wn. App. 516, 522-23 n.19, 820 P.2d 964 (1991) (citing *Pend Oreille PUD I v. Tombari*, 117 Wn.2d 803, 819 P.2d 369 (1991)).

In its section devoted to this *Rains* factor, Plaintiff argues that it filed suit before this Court rather than pursuing its claims in King County Superior Court because that would have entailed "a trial and likely appeal" "because of patent erroneous rulings by Judge Shaffer." Dkt. #33 at 8.  Defendants argue that the substantive merits of the previous court's ruling is outweighed by the fact Plaintiff was given ample incentive and opportunity to litigate these issues before Judge Shaffer, citing to *Thompson v. State Dept. of Lic.*, 138 Wn.2d 783, 982 P.2d 601(1999).  *Thompson* held "[t]he public policy of avoiding duplication of proceedings where the parties had ample incentive and opportunity to litigate an issue indicates that no injustice is

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

done in giving preclusive effect to a decision from the first proceeding, even if, as here, we may have reason to believe the first result is erroneous." 138 Wn.2d at 799.

The Court finds Defendants' argument the more persuasive. As the Washington Supreme Court noted in *Thompson*, "it may be that the [previous] court was in error in its ruling…. This would undoubtedly have subjected the judgment to reversal on appeal, or to reversal by some other form of direct attack, but it does not subject it to a collateral attack." 138 Wn.2d at 799 (citing *Kinsey v. Duteau*, 126 Wash. 330, 333 218 P. 230 (1923)).

### b. Applying Collateral Estoppel to this Case

Having met the four factors outlined in *Rains*, it is clear that Plaintiff can be estopped from relitigating issues decided by Judge Shaffer on partial summary judgment.  Thus, for purposes of Defendants' Motion for Summary Judgment, the Court concludes that Pacific Boring is estopped from arguing contrary to Judge Shaffer's previous rulings listed above.

### C. Hearsay

Plaintiff argues that "Judge Shaffer's rulings on contract issues are hearsay…" Dkt. #27 at 14.  Defendants argue that orders, judgments, and hearing transcripts of prior rulings are not hearsay when admitted to determine collateral estoppel effect, citing *Weurfel v. City of Seattle*, Case No. Civ. 03-3660 JLR, 2006 U.S. Dist. LEXIS 1398 at * 10 2006 WL 27207 (W.D. Wash. Jan. 5, 2006).   The Court agrees with Defendants—Judge Shaffer's rulings are admissible for purposes of establishing collateral estoppel.

### D. Defendants' Motion for Summary Judgment on Professional Negligence

Pacific Boring alleges nearly identical professional negligence claims against Defendants STC and Dr. Staheli.  *See* Dkt. #1 at 16-19; 21-24.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 13

In order to recover for negligence, Plaintiff has the burden to show that (1) Defendants owed it a duty, (2) Defendants breached that duty, (3) an injury resulted, and (4) the breach was the proximate cause of the injury.  *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013) (citing *Crowe v. Gaston*, 134 Wn.2d 509, 514 (1998)).

### a.  Existence of a Duty

"A duty may be predicated on violation of either a statute or common law principles of negligence."  *Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wn.2d 601, 618, 220 P.3d 1214 (2009) (citing *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 932, 653 P.2d 280 (1982)).  Whether an actionable duty was owed to a plaintiff is a threshold determination.  *Munich v. Skagit Emergency Commc'n Cent.*, 175 Wn.2d 871, 877, 288 P.3d 328 (2012).

Plaintiff's Complaint alleges that Defendants STC and Staheli owed Pacific Boring a duty under professional standards applicable to engineers in the state of Washington, citing to several WAC regulations and RCW statutes.[4]  *See* Dkt. #1 at 16-19; 21-24.  Plaintiff does not appear to allege that Defendants owed it a duty under common law.  *See id.*

Defendants argue that the regulations and statutes cited to by Plaintiff establish ethical obligations owed to the public at large, an engineer's client and employer, and to the Board.  However none of these statutes or regulations govern the relationship between the parties at issue in this case—that of a professional engineer providing services to a utility district and a subcontractor on a project with that district.  Dkt. #24 at 12-13.

Defendants argue that in order for the duty of care to be actionable it must be one owed to the injured plaintiff, and not to the public in general, citing *Taylor v. Stevens Cnty.*, 111 Wn.2d 159, 759 P.2d 447 (1988) for the proposition that a duty to the public in general is

---

[4] Plaintiff cites to RCW 18.43 et seq. and RCW 18.235.130; WAC 196-27A-020(1)(a); WAC 196-27A-020(1)(b); WAC 196-27A-020(1)(e); WAC 196-27 A-020(1)(f)).  *See* Dkt. #1 at 17.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 14

considered a duty to no one in particular; or stated another way, "a duty to all is a duty to no one." 111 Wn.2d at 163 (quoting *J&B Dev. Co. v. King Cnty.*, 100 Wn.2d 299, 303, 669 P.2d 468, (1983), *overruled on other grounds*, *Taylor*, 111 Wn.2d at 167; *see also Chambers-Castanes v. King Cnty.*, 100 Wn.2d 275, 284, 669 P.2d 451 (1983)).

Defendants cite to *Burg v. Shannon & Wilson, Inc.*, 110 Wn. App. 798, 804, 43 P.3d 526 (2002) as an illustrative case. In *Burg*, a group of homeowners sued a design firm hired by the City of Seattle to analyze the cause of recent landslides on City-owned property. *Id*. at 801. The design firm concluded that the City needed to install dewatering wells to protect against future slides. The advice was ignored and additional landslides later caused significant property damage to plaintiffs' properties. *Id*. The homeowners sued the engineering firm, alleging the engineers owed a duty to warn them of the potential dangers to their properties. *Id.* The appellate court held that the statutory and regulatory provisions governing the ethical obligations of engineers do not create an individual duty. "The broad pronouncements that engineers owe a general duty to the public welfare alone, do not establish that engineers owe a duty to any identifiable group or individual." *Id.* at 807. Defendants argue that these are the very same statutory and regulatory provisions relied on by Plaintiff.

In Response, Plaintiff points out that the homeowners in *Burg* failed to provide any evidence of a relationship outside the engineer's general duty to the public. *Id.* at 807. Plaintiff argues that "*Burg* left open the possibility that if a sufficiently close relationship exists between a professional and a third party, such as one forged by the 'affirmative conduct' of [a] tortfeasor, then a third party may bring a claim of professional negligence." Dkt. #27 at 21. Plaintiff argues that a defendant engineer firm who engaged in "affirmative conduct"[5] with a

---

[5] Plaintiff's examples of affirmative conduct in this matter include: "…Defendants took a correct microtunneling design and manipulated it by deleted [sic] pertinent information and creating extreme baseline conditions, in an

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 15

plaintiff subcontractor may open itself up to liability for that conduct, citing *Donatelli v. D.R. Strong Consulting Engineers, Inc.*, 179 Wn.2d 84, 93 (2013) ("Engineers may also assume additional professional obligations by their affirmative conduct.").

Despite Plaintiff's desire to rely on *Donatelli* for a new source of liability, that case only addressed affirmative conduct between an engineer firm and its client. *See* 179 Wn.2d at 92-93. As such, *Donatelli* does not provide clarity as to the specific issue before the Court—whether an engineer owes a professional, statutory duty to a subcontractor.

Defendants cite to *Berschauer/Phillips Construction Co. v. Seattle School District No. 1*, 124 Wn.2d 816, 826-827, 881 P.2d 986 (1994) as a case directly on point. Defendants argue that "*Berschauer* still governs claims by contractors against design professionals where there is not contract, and holds that a design professional does not owe a duty of care to a contractor. As such, a design consultant who did not stamp any design drawings under a contract with the design engineer also does not owe a duty to a subcontractor…" Dkt. #24 at 15.

Much ink is spilled by the parties over the applicability of the "independent duty doctrine." As the Washington Supreme Court stated in *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 243 P.3d 521 (2010):

> In a case like this one, where a court applying Washington law is called to "distinguish between claims where a plaintiff is limited to contract remedies and cases where recovery in tort may be available," the court's task is not to superficially classify the plaintiff's injury as economic or noneconomic. Rather, the court must apply the principle of Washington law that is best termed the "independent duty doctrine." Under this doctrine, "[a]n injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." Using "ordinary tort principles," the court decides as a matter of law whether the defendant was under an independent tort duty.

___

effort to claim-proof the project…. Defendants then lured [Pacific Boring] into the project based on false assurances and oversaw the change to [open shield pipe jacking], without dewatering, never disclosing their firm determination that the concept was not feasible." Dkt. #27 at 22.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 16

170 Wn.2d at 449 (internal citations omitted).

There are policy reasons for limiting the duties between contracting parties.  The Court "assume[s] private parties can best order their own relationships by contract." *Id.* at 451.  "The law of contracts is designed to protect contracting parties' expectation interests and to provide incentives for 'parties to negotiate toward the risk distribution that is desired or customary.'" *Id.* (quoting *Berschauer*, 124 Wn.2d at 827). By contrast, "tort law is a superfluous and inapt tool for resolving purely commercial disputes." *Id.* at 452 (quoting *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990)). According to the Washington State Supreme Court, "[i]f aggrieved parties to a contract could bring tort claims whenever a contract dispute arose, 'certainty and predictability in allocating risk would decrease and impede future business activity.'" *Id.* (quoting *Berschauer*, 124 Wn.2d at 826).

Plaintiff argues that *Affiliated FM Ins.* stands for the proposition that "Washington courts… impose a duty of care to third parties on several classes of professionals."  Dkt. #27 at 18.  While it would appear at first glance that *Affiliated FM Ins.* allows for a duty owed by engineers to a party like Plaintiff not in contractual privity with the engineer, the court in that case cited favorably to *Berschauer* and stated "[o]ur decisions in this case and in *Eastwood* leave intact our prior cases where we have held a tort remedy is not available in a specific set of circumstances."  170 Wn.2d at 450, n.3.  *Affiliated FM Ins.* thus appears to carve out a source of liability for engineers, specific to the facts of that case, and specifically *not* applicable to the facts of *Berschauer*.  On Reply, Defendants highlight that the *Berschauer* holding was specifically endorsed in 2010 by a plurality opinion from the same court as *Affiliated FM Ins.* Dkt. #38 at 4 (citing *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 390-91 (2010)).

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 17

In sum, the Court finds that *Berschauer* is still good law in Washington, applies to the undisputed facts of this case more closely than the cases cited by Plaintiff, and that Washington law does not support Plaintiff's claim that Defendants owed it a professional duty.  The absence of a duty is fatal to Plaintiff's claim of professional negligence.

**b.  Defective Design Claim and *Spearin* Claim**

Defendants additionally argue that, even if they had owed a duty to Plaintiff in this case, Plaintiff's subsequent actions constitute an intervening cause or assumption of risk sufficient to destroy liability or bar recovery.  Dkt. #24 at 19-25.  Defendants argue that Plaintiff "failed to construct the District's design," and that this is a bar to defective design liability under *Valley Constr. Co. v. Lake Hills Sewer Dist.*, 67 Wn.2d 910, 915-16, 410 P.2d 796 (1965) and *Atherton Condominium Apartment-Owners Ass'n Bd. Of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 534, 799 P.2d 250 (1990).  That Plaintiff agreed to deviate from the District's design for the project is a settled issue that Plaintiff is estopped from relitigating.  *See* Plaintiff's Cross Motion for Collateral Estoppel, ruling ##1-3, and 7, *supra*.  To the extent that Plaintiff's claim of professional negligence relies on a claim of defective plans and specifications, this claim would fail even if a duty were established.

Defendants argue that Plaintiff seeks additional compensation for costs overruns and nonpayment, allegedly caused by the District's inadequate and defective plans and specifications, through an implied warranty claim under *United States v. Spearin*, 248 U.S. 132 (1918).  Dkt. #24 at 16.  The Court agrees with Plaintiff that Defendants' citation to the *Spearin* Doctrine is inapposite as Plaintiff has brought negligence and negligent misrepresentation claims, not a warranty claim.  *See* Dkt. #27 at 15.

**E.  Defendants' Motion for Summary Judgment on Negligent Misrepresentation**

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 18

### a. Legal Standard

To establish negligent misrepresentation, a plaintiff must show by clear, cogent, and convincing evidence that the defendant negligently supplied false information the defendant knew, or should have known, would guide the plaintiff in making a business decision, and that the plaintiff justifiably relied on the false information.  *Lawyers Title Ins. Corp. v. Baik*, 147 Wn.2d 536, 545, 55 P.3d 619 (2002).   In addition, the plaintiff must show that the false information was the proximate cause of the claimed damages.   *Id.* Proximate cause can be divided into two elements: cause in fact and legal cause. *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 609, 257 P.3d 532, 544 (2011) (citing *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 478, 951 P.2d 749 (1998)).  "The focus in the legal causation analysis is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability. A determination of legal liability will depend upon mixed considerations of logic common sense, justice, policy, and precedent."   *Id.* at 611 (citing *Schooley*, 134 Wn.2d at 478–79) (internal quotation marks omitted).  Legal causation is a question of law.  *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 204, 15 P.3d 1283 (2001).

Plaintiff's Complaint suffers from a lack of clarity as to 1) what false information provided by Defendants to Plaintiff is relevant to this claim; 2) why it was false; 3) why it was negligent to provide this information; and 4) why Plaintiff's reliance on this information was justified.   Plaintiff alleges that Defendants supplied "flawed documents for bidding and construction purposes" "concerning the nature of the ground conditions" and the "baselines" for the project, and that this "misled bidders."   Dkt. #1 at 19.   Plaintiff also alleges that Defendants communicated misleading information directly to Plaintiff.  *Id.* at 20.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 19

In reviewing the factual background provided in Plaintiff's Complaint, it is apparent that Plaintiff's claim refers to two separate acts of alleged negligent misrepresentation.  First, there are the alleged modifications made by Defendants to a GeoEngineer's geotechnical report and/or the creation by Defendants of one or more Geotechnical Design Report(s), all of which were created for and transmitted to the District.  *Id.* at 7-10.  Second, there is a "discussion with Staheli about the nature of the ground conditions," where Defendants allegedly advised Plaintiff that the ground conditions "were very dense and 'should stand' and flowing water was not anticipated" and where Defendants allegedly advised that open shield pipe jacking was appropriate.  *Id.* at 12-13.[6]  These facts are also cited to in Plaintiff's Opposition to Defendants' Motion with additional detail.  *See* Dkt. #27 at 9-10.

Defendants argue that "[t]he first claim involving allegedly false information in the contract documents fails as a matter of law for the same reasons why PBI's professional negligence claims fail."  Dkt. #24 at 18.  Presumably, Defendants are arguing that this claim fails for lack of a duty.  Defendants argue that the second claim fails because Plaintiff cannot prove Defendants' oral assertions were the proximate cause of Plaintiff's damages.  *Id.*  Defendants highlight that the discussion between Defendants and Plaintiff as to the ground conditions occurred "pre-bid" and was made during "a short call."  Dkt. #24 at 18.  Defendants argue that this conversation did not proximately cause Plaintiff's damages because it occurred before Change Order No. 1, and because Plaintiff "failed to ensure, design and engineer its OSPJ method to perform under the soil indicated in the contract and failed comply with its contractual obligations to dewater."  *Id.* at 20.

---

[6] Plaintiff also alleges that Defendants contacted Plaintiff on June 30, 2011, "and solicited [Plaintiff] to bid the job."  Dkt. #1 at 12.  Although Plaintiff strongly emphasizes this fact, it is not clear at all to the Court that the mere solicitation of Plaintiff is alleged by Plaintiff to constitute evidence of negligent misrepresentation.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 20

Defendants do not deny communicating the information at issue to Plaintiff, nor do they deny that Plaintiff's reliance on these statements was justifiable. Defendants do not address the "flawed" or "misleading" nature of the information, except to point to Judge Shaffer's prior rulings.

In its Opposition, Plaintiff still does not clarify 1) what specific false information provided by Defendants is relevant to this claim; 2) why it was false; 3) why it was negligent to provide this information; and 4) why Plaintiff's reliance on this information was justified. Plaintiff's Opposition's Statement of Facts fails to highlight facts supporting the above negligent misrepresentation elements. In its Legal Analysis section on negligent misrepresentation, Plaintiff refuses to connect any specific facts with its claim, instead listing the basic elements of a negligent misrepresentation claim and "[Plaintiff] addressed each above." Dkt. #27 at 24. Presumably, the "above" is its entire Statement of Facts. This does not satisfy the "sufficient showing on an essential element of her case" required under *Celotex, supra.*

Instead of supporting its claim, Plaintiff attacks Defendants' arguments. Most intriguingly, Plaintiff argues that its execution of Change Order 1 "was as much induced by Staheli's misrepresentation as was the contract it modified." Dkt. #27 at 24. However, this is not sufficient to prevent summary judgment on this claim because, taking all inferences in favor of Plaintiff, Plaintiff is still unable to sufficiently show legal causation. Plaintiff is estopped from rearguing that the ground conditions encountered in the Project differed from those anticipated in the contract that Plaintiff signed with the District, and from rearguing that dewatering was not part of the contract. *See* Plaintiff's Cross Motion for Collateral Estoppel, ruling ## 5, 8, and 9, *supra*. Because the conditions encountered were anticipated in the written

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 21

contract, the Court finds that Plaintiff's alleged damages were not proximately caused by Defendants' oral statements, but by their own actions contrary to their contractual obligations.

As Plaintiff is unable to show causation, the Court need not address Defendants' assumption of risk defense.

**F. Plaintiff's Relief of Attorneys' Fees**

As the Court has dismissed Plaintiff's remaining claims, it need not address Plaintiff's attempted relief of attorneys' fees.

**G. Defendants' Motion to Strike Inadmissible Evidence**

Defendants attempt to move to strike the Declaration of Sam Baker, Dkt. #28, within their Reply. *See* Dkt. #38 at 13. This Motion is made improperly without providing an opportunity for a Response. While the Court agrees that Dkt. #28 "more resemble[s] an adversarial memorandum than a bona fide affidavit," *see id,* the Court declines to rule on this issue at this time.

## IV.    CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS

1. Defendants' Motion for Summary Judgment on Plaintiff's Remaining Claims, Dkt. #24, is GRANTED.

2. Plaintiff's Cross-Motion for Summary Judgment Denying Defendants' Collateral Estoppel Affirmative Defense, Dkt. #33, is DENIED.

3. This case is now CLOSED.

DATED this 5 day of October 2015.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE